,ROBERT J. BARTON, PLAINTIFF IN ERROR, VS. THE
　STATE OF FLORIDA, DEFENDANT IN ERROR.

Criminal law—Violation of prohibition laws—Liquor election,
　collateral attack on criminal trial—Canvassing board in
　liquor election.

1.　Under section 861 Revised Statutes the board of county
　commissioners is the body authorized to canvass the vote and
　declare the result of elections held to determine whether the
　sale of spirituous, vinous and malt liquors shall be prohibited
　in any county; and such board of county commissioners con-
　stitute "the county canvassing board" referred to in section
　1 of Chapter 4552 laws of 1897, that provides that: "in all
　prosecutions by the State for the unlawful sale of intoxicat-
　ing liquors, wines or beer contrary to prohibition regulations,
　the introduction of a copy of the record of the result of the
　canvass of the returns of the election as made by the county
　canvassing board and recorded in the minutes of the pro-
　ceedings of the board of county commissioners, duly certified

to by the Clerk of the Circuit Court for such county in which an election shall have been held, shall be taken as *prima facie* evidence that such election was legally called, conducted and holden."

2. When on the trial of a party indicted or informed against for unlawfully selling intoxicating liquors in a county where such sale has been prohibited by an election held, the prosecution introduces in evidence a duly certified copy of the record of the result of the canvass of the returns of such election, as made by the board of county commissioners and recorded in the minutes of their proceedings, as provided for by section one of Chapter 4552 laws of 1897, the introduction of such certified copy, though declared to be only *prima facie* evidence of the fact that such election was legally called, conducted and holden, does not give to the accused the right in his trial for the crime to contest such election for mere *irregularities* in its conduct.

3. The statute makes it a crime to sell intoxicating liquors in counties "which have voted against the sale of such liquors," and where an election has been held, and it was properly called by the proper officials, upon a proper petition, and the result against selling has been ascertained, declared and recorded as provided by law the county has *"voted against the sale"* within the meaning of the statute imposing a penalty for its violation, and in prosecutions for offences thereunder mere *irregularities* in the conduct of the election can not be shown in defence, unless they go to the point of showing a want of authority or jurisdiction to *call the election,* or unless they show that the canvass and declaration of the result was the product of corruption or fraud on the part of those whose duty it is to canvass the returns and declare the result. (Mabry, J., dissents.)

Writ of Error to the Circuit Court for Hamilton County.

The facts of the case are stated in the opinion of the Court.

*M. F. Horne* and *Johnson & Johnson,* for Plaintiff in Error.

*William B. Lamar,* Attorney-General, for the State.

TAYLOR, C. J.:

The plaintiff in error, on information filed by the State Attorney, was tried and convicted in the Circuit Court of Hamilton county, at its Spring term, 1901, of the crime of illegally selling liquors in said county in violation of prohibition alleged to have been established in such county by an election there held on September 6th, 1898, and from the money fine imposed sued out this writ of error.

The assignments of error are as follows: 1st. The court erred in allowing the certified copy of the original canvass read in evidence. 2nd. The court erred in allowing the certified copy of the original canvass read in evidence, before hearing evidence as to the validity of the election. 3rd. The court erred in sustaining the objections of the State Attorney to the following question propounded by the defendant's attorneys to the witness I. J. McCall, to-wit: "As such Clerk are you in custody of any record, or is there any record showing that notice of this local option election that was held in Hamilton county September 6th, 1898, was ever published by the clerk of the Circuit Court for the term of thirty days in any newspaper published in said county?" 4th. The court erred in sustaining the objections made by the State Attorney to the following question propounded by defendant's attorneys to the witness I. J. McCall, to-wit: "Was there any notice given by the county commissioners or the clerk to the supervisor of registration or to the various district deputy registration officers, or to the tax collector as to the holding of said election?" 5th. The court erred in sustaining the objection made by the State

Attorney to the following question propounded by the defendant's attorneys to the witness I. J. McCall, to-wit: "Did the county commissioners of Hamilton county revise' the registration list of this county fifteen days before the holding of this election, and were the names so stricken from the registration list by the county commissioners and supervisor of registration, published alphabetically by the districts?" 6th. The court erred in ruling that the publication of the name of inspectors and clerks of this eletcion was sufficient. 7th. The court erred in overruling the defendant's objections to the validity of this election. 8th. The court erred in overruling the defendant's attack upon the said election. 9th. The court erred in ruling that the preparation of the ballots, cards of instruction to voters and the sending out the ballot boxes was a compliance with the law. 10th. The court erred in ruling that it was discretionary with the board of county commissioners as to whether or not they would require the registration books to be kept open for registration for this election. 11th. The court erred in overruling defendant's objections to the following question propounded by the State Attorney to the witness I. J. McCall, to-wit: "How many ballots were there that came from the sixth district as being polled?" 12th. The court erred in sustaining the objection made by the State Attorney to the following question propounded by the defendant to the witness I. J. McCall, to-wit: "What do you know, if anything, about persons voting in that election who were not shown by the registration books to have paid their poll taxes as a prerequisite to voting?" 13th. The court erred in sustaining the objections made by the State Attorney to the following question propounded by the defendant to witness I. J. McCall, to-wit:

"What stand did you and Col. Roberson take in that election?"   14th The court erred in sustaining the objection made by the State Attorney to the following question propounded by the defendant to the witness Levi Lee, to-wit: "There was difference enough in the size of these tickets that you could have directed some one how to have voted by the size of the tickets, was there?"   15th. The court erred in overruling defendant's objection to the following question propounded by the State Attorney to the witness D. M. Deas, to-wit: "Mr. Deas, how many votes were polled on that day in that election?"   16th. The court erred in overruling the defendant's objections to the following question propounded by the State Attorney to the witness D. M. Deas, to-wit: "Mr. Deas, take this paper in your hand and say how many votes were polled in that district on that day?"   17th.  The court erred in overruling defendant's objections to the following question propounded by the State Attorney to the witness G. H. McCullers, to-wit :  "Will you please explain what that means, those four straight marks?"   18th.  The court erred in overruling the defendant's motion to strike out and withdraw from the evidence the certified copy of the record of the result of the canvass of the local option election held in Hamilton county on the 6th day of September, 1898, as made by the board of county commissioners of said county, upon the grounds set out in said motion.   19th. The court erred in overruling defendant's motion for a new trial.   20th. The court erred in holding and finding that said local option election was conducted in the manner prescribed by law for holding general elections.   21st. The court erred in finding the defendant guilty.

The first, second and eighteenth assignments of error all relate to the admission in evidence of a certified copy made by the Circuit Clerk of the record of the result of the election held to determine whether the sale of liquors in said county should be prohibited therein, transcribed from the minutes of the board of county commissioners where the same was recorded. Under these assignments it is contended that the returns of this prohibition election should have been made to the county canvassing board established by law for canvassing the result of general elections, and not to the board of county commissioners, and that any canvass of the returns of such election made by the latter was unauthorized and void, and any declaration of the result of such election made by them was likewise unauthorized and void, and that, consequently, a certified copy of the record of the result of such election as made by them was impertinent and furnished no evidence of the calling, holding, or result of such election. That these positions are untenable, we need only to quote the following provisions of our statutes: Section 861 Revised Statutes, treating of prohibition elections, reads as follows: "Inspectors of election shall be appointed and qualified as in cases of general elections, and they shall canvass the vote cast and make due returns of the same to the county commissioners without delay. The county commissioners shall canvass the returns and declare the result, and cause the same to be recorded as provided in the general law concerning elections, as far as applicable." Section 1 of Chapter 4552 laws, act of 1897, is as follows: "In all prosecutions by the State for the unlawful sale of intoxicating liquors, wines or beer contrary to prohibition regulations, the introduction of a copy of the record of the result of the

canvass of the returns of the election as made by the county canvassing board and recorded in the minutes of the proceedings of the board of county commissioners, duly certified to by the clerk of the Circuit Court for such county in which an election shall have been held, shall be taken as *prima facie* evidence that said election was legally called, conducted and holden." Under the familiar maxim that statutes in *pari materia* should be construed together, we interpret the words "county canvassing board," as used in the last above quoted statute, as having reference to the board provided by the above quoted section 861 of the Revised Statutes whose duty it is made to canvass and declare the result of *such elections,* and that is the board of county commissioners. The correctness of this construction is made clearer from the further fact that in the last above quoted section of Chapter 4552, in making provision for a certified copy of the result of the canvass to be evidence, it requires such copy to be taken from the records made of it in the minutes of the board of county commisioners. There was no error in admitting such copy in evidence in this case, nor in the ruling refusing to strike it out.

All of the other assignments of error, except the nineteenth, twentieth and twenty-first, consist of rulings of the court admitting or rejecting evidence that tended to question the validity of the holding and conduct of such election, and to the registration and qualification of voters at such election, and to the formality of the ballots used thereat, and to the notices of the election, publication of the names of the inspectors, and generally tending to question the validity of such election. If any of these rulings were erroneous from the standpoint of the objections urged against them, they can not avail the defendant here

because, except to the extent hereinafter indicated, it was improper for the court to permit either side to go into any inquiry whatever touching the validity and result of such election other than it was shown to be by the record of the canvass of the result thereof by the proper canvassing board. In the case of State v. Cooper, 101 N. C. 684, 8 S. E. Rep. 134, a case on all fours with the one under discussion, the court says: "The important and essential things to be done were, that the proper officers should hold the election, ascertain the result and certify the same, and deposit their certificate in the proper public office of deposit, so that the people of the township—indeed, all the people—could there learn the result. They had notice of the election, and the law charged them with knowledge of the result. It provided the means by which and the place where such information might be had by everybody. Such ascertainment and declaration of the result of the election was *prima facie* correct, and it was conclusive until by a proper action, brought for the purpose, the true result otherwise should be ascertained and declared by a judicial determination. The law contemplates and intends, generally, that the result of an election, as determined by the proper election officers, shall stand and be effective until it shall be regularly contested and reversed, or adjudged to be void by a tribunal having jurisdiction for that purpose. It would lead to confusion and ridiculous absurdity to allow the validity and result of an election to be contested every time the result of it, as determined by the election officers, became material collaterally in a litigation. In the present case the defendant might be able to prove facts showing that the election mentioned was void for one cause or another; another defendant, charged with a like offence, might be less fortunate, and

the State might show that it was regular and valid, and so on indefinitely. The law does not provide for such continual and repeated contests in every case that may arise. It intends that one contest, properly instituted for the purpose, shall establish the validity or invalidity of the election questioned. If the present defendant or others were dissatisfied with the conduct of the election, or the result of it as declared, they should have promptly brought their action, as they might have done, to contest its validity and the correctness of the ascertained result. They had the right to do so, and, as they did not, it can not be attacked in a collateral action." In the case of State v. Emery, 98 N. C. 768, 3 S. E. Rep. 810, it is said: "For all legal purposes, the result of the election is what it is declared to be by the authorized board of canvassers, empowered to make the canvass at the time when the returns should be made, until the decision has been reversed by a superior power. * * * The result of the election as decided and proclaimed, is conclusive in any collateral proceedings. It is to be, *prima facie,* that every necessary requisite has been complied with. All facts necessary to the validity of the election must be ascertained and determined, and, when proclaimed, must be final and conclusive, unless impeached or attacked in some direct proceeding." Smallwood v. City of Newbern, 90 N. C. 36; Black on Intoxicating Liquors, § 103; Block v. Commissioners, 99 U. S. 686; Crouse v. State, 57 Md. 327; Mackin v. State, 62 Md. 244; Combs v. State, 81 Ga. 780, 8 S. E. Rep. 318; Puckett v. State, 71 Miss. 192, 14 South. Rep. 452; People v. Adams, 95 Mich. 541, 55 N. W. Rep. 461; Jones v. State, 67 Md. 256, 10 Atl. Rep. 216; Thomas v. Abbott, 105 Mich. 687, 63 N. W. Rep. 984.

The information in this case was based upon section
1, Chapter 4746 act approved June 2, 1899, as follows:
"Whoever sells or causes to be sold any spirituous, vinous
or malt liquor in any county or precinct which has voted
against the sale of such liquors under the provisions of
Chapter 8, Title 11, Division 1, Revised Statutes of the
State of Florida, shall be punished," &c.   The portion of
the Revised Statutes referred to embraces sections 857 to
864 inclusive and those sections provide for the calling,
holding and conducting of elections to decide whether
the sales of intoxicating liquors, wines or beer shall be
prohibited in counties where such elections are held as
provided for in Article XIX of the constitution of 1885.
Section 861 requires the county commissioners to canvass
the returns and "declare the result," and to cause the
same to be recorded, &c.   No provision is made for con-
testing an election of this character, nor does any express
provision of law now in force give to any defendant
charged with the crime denounced by section 1, Chapter
4746 above referred to, the right to contest such elections
for irregularities in conducting them in prosecutions for
such crimes, and it is not to be supposed that the legisla-
ture contemplated that every person charged with such
crime should collaterally contest the election upon such
grounds, in such prosecutions.   The statute makes it a
crime to sell intoxicating liquors in counties "which have
voted against the sale of such liquors" under certain pro-
visions of law therein referred to, and where an election
has been held, and it was properly called by the proper
officials upon a proper petition, and the result against sell-
ing has been ascertained, declared and recorded as pro-
vided by the law, we are of opinion the county has "voted
against the sale" within the meaning of the statute, and

that in prosecutions for offences thereunder mere irregularities in conducting the election can not be shown in defence unless they go to the point of showing a want of authority or jurisdiction to call the election or unless they show that the canvass and declaration of the result was the product of corruption or fraud on the part of those charged with the duties of canvassing the returns and declaring the result. It is true that section 1, Chapter 4552, already quoted in this opinion, declares that a duly certified copy of the record of the result of the canvass of the returns shall in prosecutions of this nature be taken as *prima facie* evidence that said election was "legally called, conducted and holden," and that such certified copy when introduced will furnish *prima facie* evdence of certain facts not necessary in our view for the State to prove, but that does not necessarily give the accused a right to put in issue everything of which the certified copy is made *prima facie* evidence, and we think in view of all the provisions of law mentioned it was not intended to give such right.

The nineteenth, twentieth and twenty-first assignments of error, except as they have already been passed upon in what has been said, question the sufficiency of the evidence to support the court's finding, a jury having been waived and the cause on both the law and facts having, by agreement, been submitted to the judge. We think the evidence fully supported the finding both as to the fact that prohibition had been established in said county by an election held, and as to the illegal sale in violation thereof, by the defendant.

The judgment of the Circuit Court is hereby affirmed.

*Mabry J.,* dissenting.

This was a prosecution for an alleged violation of the local option law, the information alleging, with other matters, that "pursuant to the provisions of an act to provide for the proper enforcement of the provisions of Article XIX of the constitution of 1885, an election was held in said county (Hamilton) on the sixth day of September, A. D. 1898, to decide whether the sale of intoxicating liquors, wines and beer should be prohibited therein, and at such election a majority of the votes was cast against such sale in said county." The case was tried before the court without a jury, and on the hearing testimony was admitted bearing upon the validity of the calling, conducting and holding the election alleged in the information, and also upon the qualification of voters who were permitted to vote at the same.

The opinion says that if the rulings in reference to certain matters "were erroneous from the standpoint of the objections urged against them they can not avail the defendant here because, except to the extent hereinafter indicated, it was improper for the court to permit either side to go into any inquiry whatever touching the validity and result of such election other than it was shown to be by the record of the canvass of the result thereof by the proper canvassing board." The extent to which the proof may go under the exception mentioned, as explained in a subsequent portion of the opinion, is that when the election has been properly called by the proper officials and the result has been declared and recorded as provided by law, then irregularities in conducting the election cannot be shown in evidence unless they go to the point of showing a want of jurisdiction to call the election, or "unless they

show that the canvass and declaration of the result was the product of corruption or fraud on the part of those charged with the duties of canvassing the returns and declaring the result." It is not made very definite to what extent the court will go in its investigations under the reservation that irregularities can not be shown unless they show the canvass and declaration of result to be the product of corruption or fraud on part of those whose duty it is to canvass the returns and declare the result, but as certain questions relating to the validity of holding and conducting the election, aside from those relating to the acts of those whose duty it was to canvass the returns and declare the result, are not gone into, but shut out on the ground that they are not open for investigaion under the rule announced, I am forced to the conclusion that I can not agree to the result reached. I will give my reasons for the views I have.

The legislature in 1887, Chapter 3700, passed an act to provide for elections under and to properly enforce the provisions of Article XIX, or the local option article, of the constitution of 1885. After providing for the ordering of an election by the county commissioners, upon the written application of one-fourth of the registered voters of a county, to decide whether the sale of intoxicating liquors, wines or beer should be prohibited therein, it was enacted that "said election shall be held and conducted in the manner prescribed by law for holding general elections, except as herein provided; that inspectors of election shall be appointed and qualified as in cases of general elections, and they shall canvass the vote cast and make due returns of the same to the county commissioners within five (5) days after said election. * * * And should a majority of the votes legally cast at any such

election be against selling, then no intoxicating liquors, wines or beer shall be sold in the county in which said election was held until otherwise determined by an election, which shall not be held oftener than once in every two years." Provision was made for vending intoxicating liquors when a majority of those legally voting cast their ballots in favor of selling. The Circuit Clerk was required within three days after the ordering of such election to appoint a deputy registration officer for each voting precinct notify them of such appointment and provide them with proper registration books for the registration of voters. The third section of the act provided that persons selling or causing to be sold any liquors, as therein provided, in any county voting against the sale of such liquors, contrary to the provisions of the act, should be deemed guilty of a misdemeanor, and upon conviction shall be punished as therein provided.

During the session of 1887, but subsequent to the passage of Chapter 3700, the legislature enacted a general election law, Chapter 3704, and therein introduced the new feature of having the registration of voters done under a supervisor of registration to be appointed by the Governor instead of the Circiut Clerk as was the case under former laws. The county commissioners appointed the precinct judges and inspectors of election who canvassed the vote and made returns in the shape of duplicate certificates of the result to the supervisor of registration and county judge of the county who, with the president, or other member, of the board of county commissioners, constituted the county canvassing board. The board was required to canvass the votes for the several offices and persons as shown by the returns on file with the said

judge and supervisor, respectively, and after completing the result the said board was required to make and sign duplicate certificates thereof, and the supervisor or registration was required to record the same in a book to be kept for that purpose. In case of the election of a county officer the supervisor was required to give him a certificate of his election, and should give to any person desiring a copy of such returns from the record a certified copy thereof, or any part of same, upon payment of customary fees for copying and certifying papers in the office of the Circuit Clerk. This was practically the condition of the law, in reference to local option elections under the provisions of Article XIX of the constitution, until the adoption of the Revised Statutes, and the county commissioners, though the returns of elections were made to them, had nothing to do with the canvass of the votes. It was simply their duty to receive and keep the returns in their official custody as records of the result of the election. County Commissioners of Franklin County v. State ex rel. Patton, 24 Fla. 55, 3 South. Rep. 471. In Cook v. State, 25 Fla. 698, 6 South. Rep. 451, it is said in the opinion that "in the case of Butler and Chapman, decided at the last January term of this court, and reported in 6 South. Rep. 67 (25 Fla. 347), we held that in prosecutions for the violation of the local option act, a count in an indictment which alleged that the election in Levy county was held in pursuance of the provisions of the local option act was sufficient to show that said election was held according to the provisions of said act, without stating the facts and circumstances under which it was held. But under this general allegation that said election was held pursuant to the provisions of this local option act, it is incumbent upon the State to prove that

the election was held pursuant to all the provisions of said act, including the necessary legal steps leading up to the ordering. of the election, the holding of the same and the result thereof, and in order to admit such proof, it is necessary for the indictment to contain allegations showing that said election was held in pursuance of the provisions of the statute; otherwise the evidence would clearly be inadmissible, for it is an established rule of law that the evidence offered must correspond with the allegations, and be confined to the point in issue." In a recent case (Randall v. Tillis, 43 Fla. 43, 29 South. Rep. 540) it is held that an indictment or information, when the local option Article XIX has been put in operation by a majority vote, must necessarily allege, in order to charge the offence, the fact of the holding such an election, and that it resulted against the sale of liquors, as well as the fact of the prohibited sale, and that such allegations must be established by proof. After the decision in the Cook case, which was in June, 1899, I think no doubt can exist that under the law then existing, when a plea of not guilty was entered in a prosecution for violating the provisions of the act putting in force the local option Article XIX of the constitution, the burden was upon the State to prove that "the election was held pursuant to all the provisions of said act, including the necessary legal steps leading up to the ordering of the election, the holding of the same and the result thereof." Such was the professional view, and also the practice in the State as I understand it, when the local option law was claimed to be in existence and prosecutions were instituted for its alleged violation. Has any change taken place in our statutory regulations on the subject that will authorize a different construction, for it resolves itself here into a question of statutory con-

struction, as is the case under other jurisdictions? The Revised Statutes provide for the calling of the election, as in the act of 1887, and that the inspectors of election, to be appointed and qualified as in cases of general elections, shall canvass the vote cast and make due returns to the county commissioners without delay, and the commissioners are to canvass the returns, declare the result and cause the same to be recorded as provided in the general law concerning elections, as far as applicable. Sections 857, 861 Revised Statutes. At this point some confusion evidently arose in reference to where the result of the canvass should be recorded, as indicated in the acts of 1895 and 1897, to which reference is hereafter made. The general law, found in the statutes providing for elections, directed the supervisor of registration to record the result of the general county canvass in a book to be funished him by the county commissioners, and, in later election statutes, called the "Record of Election Returns." The act of 1887, Chapter 3700, was the basis of the revision in reference to the election to put in force Article XIX of the constitution, and is therein designated as Chaper 8, Title XI, Division 1, and the revision also contained another section—2634—as follows, viz: "Whoever sells, or causes to be sold, any spirituous, vinous or malt liquors in any county or precinct which has voted against the sale of such liquors under the provisions of Chapter 8, Title XI, Division 1, shall be punished by imprisonment not exceeding six months, or by fine not exceeding five hundred dollars." This section was horribly mutilated in an attempt to amend it by Chapter 4551, acts of 1897, but this last effort at amendment was wiped out by the act of 1899, Chapter 4746, which reads as follows, viz: "Section 1. Whoever sells, or causes to be sold, any

spirituous, vinous or malt liquors in any county or pre-
cinct which has voted against the sale of such liquors
under the provisions of Chapter 8, Title 11, Division 1,
Revised Statutes of the State of Florida, shall be punished
upon conviction thereof, by imprisonment in the county
jail not exceeding one year, or by fine not exceeding one
thousand dollars; Provided, however, That nothing in this
act shall be construed so as to repeal section 9 of Chapter
4322, Laws of Florida, approved June 1, 1895." It will
be seen that this act of 1899 re-enacted the law found in
section 2634 Revised Statutes,, except as to the punish-
ment, and in substance the same as the third section of
the act of 1887, *supra*. This third section of the act of
1887 provided a penalty for those selling in any county
voting against such sale contrary to the provisions of the
act, and that provided for the election and its canvass.
The returns were required to be kept by the county com-
missioners as records of the result of the election. County
Commissioners v. Patton, *supra*. It is supposed that the
provision in the act of 1899, Chapter 4746, requires a con-
struction that forbids an enquiry, beyond the matters
hereinbefore stated, into an election to put in operation
Article XIX of the constitution, but I think to so construe
it now would be to put the court in conflict with the early
decisions in the subject and involve it an inconsistency of
ruling.

The act of 1899, the one in operation when the
offence is alleged to have been committed in the present
case, is the same as that contained in the Revised Statutes
and, I think, substantially the same as the act of 1887, so
far as the point now involved is concerned; that is, pro-
viding a penalty for those selling in a county that had
voted against the sale of intoxicating liquors. The Cook
case holds pointedly that you must allege and prove that

the election was pursuant to all the provisions of the act, including the necessary legal steps leading up to the ordering of the election, the conducting and holding of the election and the result thereof. There is nothing in the revision to indicate, it seems to me, that a change was intended to be made in the statute in reference to the construction which the court had placed upon it by its decisions. The provision in the revision in reference to the canvass of the returns by the county commissioners and its record thereof does not in terms make such canvass and record proof *prima facie,* or otherwise, that the election was legally called, conducted and holden, nor does it declare the effect of such canvass or record to any extent. There is, however, to my mind a conclusive answer to the view that the courts can not, in a criminal prosecution for an alleged violation of the local option law, go into an investigation of the election further than that indicated in the opinion in this case, and that answer, briefly stated is this: After the decision in the Butler and Chapman case 25 Fla. 347, 6 South. Rep. 67, and the case of Cook, 25 Fla. 698, 6 South. Rep. 451, and after the adoption of the Revised Statutes containing a provision identical, except punishment, with the act of 1899, Chapter 4746, the legislature enacted Chapter 4378 acts of 1895, as follows, *viz*: "Section 1. In all prosecutions by the State for the unlawful sale of intoxicating liquors, wines, or beer contrary to prohibition regulations, the introduction of a copy of the canvass of the returns of the election as made by the county canvassing board, duly certified to by the supervisor of registration for said county in which an election shall have been held, shall be taken as *prima facie* evidence that said election was legally called, conducted and holden.

SEC. 2. That all laws and parts of laws in conflict with this act are hereby repealed."

This last act was amended in 1897 by Chapter 4552 as stated in the opinion and to which I refer. As before stated, some confusion may have arisen in reference to the proper place to record the result of the canvass, as directed by section 861 Revised Statutes, and when Chapter 4378 was passed, the legislature may have proceeded upon the view that the record was exclusively in the office of the supervisor of registration. The county commissioners are, however, directed to keep proper minutes of their proceedings and the act of 1897, Chapter 4552, was passed with the view of making the certificate of the Circuit Clerk as to the record of the minutes of the proceedings of the county commissioners as to such elections evidence in criminal prosecutions under the local option acts. This act of 1897 provides that a copy of the record of the result of the canvass of the returns of the election as made by the county canvassing board and recorded in the minutes of the proceedings of the board of county commissioners, duly certified to by the Circuit Clerk, shall be *prima facie* evidence that the election was legally called, conducted and holden. This statute clearly intends to prescribe a rule of evidence in criminal prosecutions under local option regulations, and I am unable to construe the term *"prima facie"* as conclusive, as such is not its natural meaning, and there is nothing in the context to require such a distortion of its meaning. The rule is general, so far as I can see, that when statutes prescribe a rule of evidence and make certain facts, or documents, *prima facie* evidence they are not to have a conclusive effect, but may be overcome by other testimony. 19 Am. & Eng. Ency. of Law, page 83. The

legislature evidently understood when Chapter 4552 was
passed that the burden was upon the State in prosecutions
under the local option law to prove that the election had
been legally called, legally conducted and legally
holden, and the purpose of the act was to make the certi-
fied copy of the record of the result of the canvass, and
recorded in the minutes of the board of county commis-
sioners, only *prima facie* evidence of such facts. If the
purpose had been to make the mentioned certificate con-
clusive of the facts stated, it is remarkable and inexplic-
able that the term *prima facie* should have been employed.
I think that the true view is that in prosecutons under the
local option law when the certified copy of the record men-
tioned in the statute, Chapter 4552, is offered in evidence
by the State the burden is upon the defendant to over-
come the *prima facie* case made in reference to all mat-
ters as to which a *prima facie* showing is imparted by the
the statute, and that he may introduce evidence for such
purpose, and when introduced it must be considered as
evidence in the case. A statute in Kentucky provided
for local option elections in localities to determine
whether spirituous, vinous or malt liquors should be sold
therein, and that if it should be found that a majority of
the legal votes cast at the election was against the sale,
the examining board should certify *that fact* and deliver
the certificate to the county clerk who was to keep it
until the next term of the county court, when the judge
thereof should have it spread on the order-book of the
court, and that the said entry of the certificate, or certi-
fied copy thereof should be *prima facie* evidence in all
prosecutions under said act. It was also further provided
in the act that after the entry of the certificate of the
examining board in the order-book, it should be unlaw-

43 Fla. 33.

ful for any person to sell any spirituous, vinous or malt liquors in said locality. It was held that the only facts required to be certified by the examining board are that an election was held for the purpose stated in the act and that a majority of the legal votes cast was against such sale, and that they were the only facts of which the certificate was any evidence at all. And further, that as to the matters covered by the certificate the burden was upon the defendant, and it was competent for him to show, if he could, that a majority of the legal voters voting on the question did not vote against such sale, but that it was not competent to prove the requisite number of notices was not posted, or not posted the length of time, before the election that the act required. Young v. Commonwealth, 77 Ky. 161. The result was that as to those matters made *prima facie* evidence by the statute the burden was on the defendant, but he could disprove them if he could, notwithstanding the statute made it a crime for any one to sell after the certificate had been recorded in the order-book of the county court.

The legislature has prescribed a rule of evidence by Chapter 4552 in prosecutions under our local option law, and in the absence of any other legislation we should give to the certificate in reference to its evidentiary force only a *prima facie* bearing. No way was provided by statute for contesting or annulling the result of the local option election, however gross may have been the management of it, or unjust the canvass of the legal vote actually cast, until the act of the present year, and it may be that a different rule should prevail under the present statutory regulations on the subject; but that is not involved in this case. The decision in the present case should depend upon a construction of our statutes in the light of past

decisions, and we can not derive much aid from adjudi-
cations in other courts.    In the North Carolina case
quoted from in the opinion it is said that "if the pres-
ent defendant or others were dissatisfied with the conduct
of the election, or the result of it as declared, they should
have promptly brought action, as they might have done,
to contest its validity and the correctness of the ascer-
tained result."    It is not pointed out how the election
could have been contested, but the court say it could have
been, and I am not sure but that when a mode is pro-
vided for contesting such an election it would exclude any
other.   The opinion in this case states that there was no
provision in our statutes for contesting an election under
the local option statute, and I know of none before the
legislation on the subject this year.   It may be that the
real object of this legislation was to provide a way of con-
testing such elections and to obviate the results liable
to happen, as indicated in the North Carolina case, by
cutting off an enquiry into the regularity of the election
in a local option prosecution.   In Maryland it is held
that any question affecting the existence of the local
option law belongs to the court that takes judicial cogni-
zance of law, and that it was unnecessary for an indict-
ment charging a violation thereof to contain a statement
of the formalities necessary to precede the law becoming
operative, as they were not facts for a jury to pass upon,
and have no place in an indictment.   Jones v. State, cited
in the opinion. This view is irreconcilably in conflict with
the decisions of this court, and to follow the Maryland
decision would result in a departure from our own.   And
so the cases cited from Michigan and Georgia will be
found on examination to be based upon peculiar provi-
sions in statutes as to the result of the election not found

in ours. Adhering to the former decisions of this court and giving due consideration to the intent of the legislature in the enactment of Chapter 4552 of the laws of 1897, I think the conclusion arrived at in this case is erroneous. I do not contend that the local option election should be upset for every or any non-essential irregularities in the holding of it, but they must show that a fair and legal result was not reached by reason thereof. In other words, the expressed will of the voters must not be defeated by the failure to observe every requirement of the law in reference to holding the election, regardless of whether or not a fair result was reached, but the court, I think, should investigate to this extent.