County Court, Rockland County, August, 1897. Reported. 21 Misc. 188.

The People of the State of New York on the relation of CHRISTOPHER FISHER, for Writ of Certiorari, v. JOHN M. HASBROUCK, County Treasurer of the County of Rockland.

1. A town meeting need not be kept open continuously from sunrise to sunset.

The provisions of the statute (Laws of 1890, chap. 569, § 29) that "Town meetings shall be kept open for the purpose of voting in the day time only, between the rising and setting of the sun," do not require that the polls, at a town meeting, shall be open at sunrise and shall be kept open continuously until sunset; and the fact that the polls at an annual town meeting, to which was submitted, under section 16 of the Liquor Tax Law of 1896, the question whether traffic in liquors should be permitted in the town, were closed about an hour before sunset, does not invalidate the decision of the town, as shown by the votes cast at the election, that such traffic be forbidden.

2. Election board—Acts not reviewable by certiorari.

The acts of an election board are not judicial in character, can not be reviewed directly by a writ of certiorari, nor can they be reviewed

collaterally in such a manner by a person who was denied a liquor tax certificate and who asserts that the town election, which decided against traffic in liquors in the town, was illegal because the polls were closed an hour before sunset.

CERTIORARI to review the determination of the treasurer of Rockland county in refusing to grant to the relator a liquor tax certificate.

Frank S. Harris, for relator.

Harvey Debaun, for respondent.

TOMPKINS, J.: This is a special proceeding by writ of *certiorari,* to review the action of the county treasurer in refusing to grant to the relator a liquor tax certificate under the Liquor Tax Law of the State.

The petition shows the relator to be a resident of the town of Ramapo in Rockland county, and a citizen of the United States, and that he possesses all the qualifications required for the issuing of a liquor tax certificate in a town where the trafficking in liquors is authorized by law, and the vote of the inhabitants thereof.

It appears that on the 12th day of May, 1897, the petitioner duly applied to the county treasurer for a certificate under subdivision 1 of section 11 of the Liquor Tax Law, accompanying his application with a duly executed and sufficient bond and a legal tender of the license fee or tax fixed by the statute to be paid in towns.

His application was refused—the petition stating that such refusal was based upon the fact that at the preceding town election a majority of the votes had been cast in the negative on all of the liquor propositions.

The relator's contention in the proceeding is that the election was irregularly conducted and was illegal, and hence there was no legal determination against the issuing of licenses or certificates in that town and the writ of *certiorari* was granted under subdivision 1 of section 28 of the Liquor Tax Law which provides as follows: "Whenever any officer charged with the duty of issuing * * * a * * * liquor tax certificate under the provisions of this act shall refuse to issue the same, * * *

such applicant shall have the right to a writ of *certiorari* to review the action of such officer." The section further provides: "If such judge or justice shall upon the hearing determine that such application for a liquor tax certificate \* \* \* has been denied by such officer without good and valid reasons therefor, and that under the provisions of this act such liquor tax certificate should be issued, such judge or justice may make an order commanding such officer to grant such application, etc."

The return made by the respondent alleges—That at the annual town election held in and for the town of Ramapo, on the 2d day of March, 1897, pursuant to section 16 of the Liquor Tax Law, the following proposition (among others) was submitted to those qualified to vote at such election:

"Shall any corporation, association, copartnership or person be authorized to traffic in liquors under the provisions of the subdivision 1 of section 11 of the Liquor Tax Law in the town of Ramapo?"

That the total vote of said town in favor of the proposition was 517; and the total vote against it was 665; making a majority of 148 *against the granting of such a license as the relator applied for.*

The respondent further shows that a recanvass of the vote on said proposition was had with the same result and that said proposition was declared defeated by the canvassing board of said town; and before relator's application was made, a certified copy of the statement of the result of said election and vote was filed by the town clerk of said town, with said treasurer; and that he refused to grant such license and certificate on the ground that at the said election a majority of the votes had been cast in the negative upon said proposition and that under the law he was not authorized to issue the certificate asked for, and that he returned the relator's application and bond.

No part of the return is traversed by the relator—on the contrary the petition sets forth the result of the election and states the same majority against the proposition as is shown by the return.

The petitioner's whole case is based upon the alleged irregularity of the election.

It is conceded that the polls of the several election districts of the town were closed at 5 o'clock in the afternoon—and it is contended by the petitioner that the polls should not have been closed

until sunset (nearly one hour later) and that persons entitled to vote were deprived of the right and hence the election was illegal.

In short, the relator seeks to have the legality of the town election determined in this proceeding against the county treasurer.

Assuming that I have power in this proceeding to pass upon the legality of the acts of the inspectors of the election, I have come to the conclusion that the closing of the polls at 5 o'clock in the afternoon does not invalidate the election or the results thereof.

Section 29 of chapter 569 of the Laws of 1890 provides:

"Town meetings shall be kept open for the purposes of voting *in the daytime only,* between the rising and setting of the sun."

Construing this statute, Judge Bradley of the Appellate Division, Second Department, in the case of The People ex rel. Van Sickle v. Austin, 46 N. Y. Supp. 526, says: "It appears that the polls were opened at 9 o'clock in the morning and continued open from that until sunset, except one hour, from 12 o'clock noon until 1 o'clock, p. m.; unlike the statutory direction applicable to general elections, the statute in question does not, in express terms, provide the hour or time the polls shall be open or that there shall be no adjournment or intermission until the polls are closed. Laws 1896, chapter 909, section 3."

"The language of the provision of the present statute as to the time that town meetings shall be kept open for purposes of voting is substantially no different than it has been for upward of eighty years (2 R. L. 127; 1 R. S. 342, § 16), and it never has been so construed as to require that the polls of town meetings be opened at sunrise or continuously kept open until sunset * * * but the contrary has been held by the courts." (*People ex rel. Van Sickle v. Austin,* 46 N. Y. Supp. 526.)

"It is not necessary that a town meeting should be kept open from sunrise to sunset, but only during the daytime *or some part thereof.*" (*People ex rel. Simonson v. Martin,* 5 N. Y. 22.)

The statute in operation at the time of the above decision by the Court of Appeals was substantially like the present law and provided that the polls should be kept open only during the daytime, between the rising and the setting of the sun.

To the same effect was the decision of the Supreme Court in the case of Goodel v. Balter, 8 Conn. 285: The petition alleges (and it is not denied) that it had been the custom for years in

the town of Ramapo to keep the polls open uninterruptedly from sunrise to sunset, and it is contended on behalf of relator that in closing them at 5 o'clock there was a departure from the established custom, without notice, by which legal votes were excluded " and the result changed " and the affidavits of nineteen or twenty persons are submitted showing that they were entitled to vote and intended to vote "yes" on the proposition but were prevented from so doing by the early closing of the polls. Their votes, however, would not have changed the result so far as proposition No. 1, which provides for the certificate applied for by the relator, is concerned, because the majority against it was 148.

It is urged by the counsel for the relator that the submission of the proposition to less than the whole number of legally quali- fied voters desiring to vote thereon was not such a submission as is contemplated by the law. Such a claim would undoubtedly be good, if the election had not been lawfully conducted and qualified voters sufficient in number to change the result had been deprived of an opportunity to vote. In that event, one who was injured thereby should have redress, but here, if all those who were deprived of a vote had voted in favor of proposition No. 1, it would not have changed the result, and relator's position as an applicant for a liquor tax certificate under that sub- division would have been no better than it is to-day.

There are other reasons which require a dismissal of the writ, which it is not necessary to discuss at length. There is no pro vision of statute or authority of law for reviewing the election by *certiorari.* It has been held that the acts of an election board are not judicial in character and hence cannot be reviewed by *certiorari.* (*People ex rel. Van Sickle v. Austin,* 46 N. Y. Supp. 526.)

If not reviewable in a proceeding against them, they cannot be collaterally, in a proceeding against the county treasurer.

Section 4 of chapter 16 of the Liquor Tax Law provides that "if for any reason the four propositions provided to be submitted herein to the electors of a town shall not have been properly sub mitted at such annual town meeting, such propositions shall be submitted at a special town meeting duly called," etc.

In my opinion, if the occasion arises for such a special town meeting, it must be called by the town board or the officer or officers charged by law with the duty of calling town meetings,

and if in a proper case such officer or board of officers refuse to do so a writ of *mandamus* would lie to compel the calling of a special election.

The certified copy of the statement of the result of the election filed with the county treasurer by the town clerk was conclusive upon him.

The statute says: "A certified copy of the statement of the result of the vote * * * shall, immediately after such submission, be filed by the town clerk * * * with the county treasurer * * * and no liquor tax certificate shall thereafter be issued," etc.

The county treasurer would have violated the law had he granted a certificate to the relator, and it necessarily follows that upon a review of his acts by the court he will not be required to do so.

The writ of *certiorari* to review the action of the county treasurer, provided for by section 28 of the Liquor Law, was intended for cases where that official had the power and was charged with the duty of issuing certificates, but failed or refused so to do. It was intended only to grant power to a judge of the court to compel the county treasurer to grant certificates in proper cases.

It was never the purpose of the law that a county treasurer, after having a statement filed with him by the town clerk certifying that a majority of the voters had decided against licenses, should go about to ascertain whether the election was regular or not, and if, in his judgment, it was not, to ignore the certified statement and issue licenses, and if that is not the duty of the county treasurer a judge cannot, by an order in a *certiorari* proceeding, compel him to do so.

For the reasons stated the writ of *certiorari* is dismissed and the determination of the respondent confirmed.

Because no brief was submitted on behalf of the respondent and thereby all the work of looking up the law and authorities was thrown upon the court, I am inclined to grant no costs to respondent; I will hear the attorneys, however, on that question.

Writ dismissed.