STATE OF MISSOURI, Respondent, v. J. F. GAMMA, Appellant.

St. Louis Court of Appeals, June 14, 1910.

1. **LOCAL OPTION: Violation: Each Sale Constitutes Separate Offense.** Each sale of liquor in violation of the Local Option Law constitutes a distinct offense.

2. ——: ——: ——: **Indictments and Informations: Identity of Offenses.** The mere fact that the same date and the same party are named as the date of the sale and the person to whom it was made in two indictments or informations charging a violation of the Local Option Law is not in itself conclusive that both charge the same offense, since it is possible there were two sales on the same day to the same person.

3. **CRIMES AND PUNISHMENTS: Criminal Practice: Pendency of Former Indictment: Identity of Offenses: Burden on De-**

fendant to Establish. Under section 2476, Revised Statutes 1899, authorizing prosecution by indictment or information and providing that the procedure first instituted shall be pursued to the exclusion of the other, a defendant, pleading a pending indictment charging a violation of the Local Option Law in bar or in abatement of a prosecution under an information charging such an offense, must plead the identity of the two offenses and prove such identity.

4. LOCAL OPTION: Criminal Practice: Validity of Adoption of Local Option Law: Motion to Quash. The validity of the adoption of the Local Option Law in a county may not be attacked by motion to quash an information charging a violation of the law, because it involves an issue of fact triable by the jury along with the case on the merits.

5. ———: ———: ———: Evidence Showing Irregular Conduct at Election Inadmissible. On a trial for violating the Local Option Law, evidence of irregularity in the conduct of the local option election, to show that the law was not legally adopted, is inadmissible, because the adoption of the law may not be. collaterally attacked, though the Legislature has provided no way to contest an election under it.

6. ELECTIONS: Contests: Statutory Origin. Contests of election are of statutory origin and are dependent on statutory provisions for their conduct.

7. LOCAL OPTION: Election: County Court Acts Judicially. The county court acts judicially in ordering a local option election and in ascertaining and declaring the result, and where all the steps taken by it are regular and in accordance with the law, its declaration of the result may not be collaterally attacked.

8. ———: Prosecution for Violation: Instruction. Where on a trial for violating the Local Option Law, the state without objection introduced in evidence the records of the county court showing the proceedings connected with the submission of the question of the adoption of the option law to a vote of the people, and no departure from the requirements of the law appeared in the records, the court properly instructed the jury that the law was in force in the county, thereby declaring the legal effect of the evidence.

9. ———: Statute Construed: Prohibits Sale of Beverage Containing Alcohol. Section 3032, Revised Statutes 1899, which provides that where a majority of the votes cast at a local option election shall be against the sale of intoxicating liquors, it shall not be lawful to sell any kind of intoxicating liquors "or beverage containing alcohol," prohibits the sale of any beverage containing alcohol in any quantity, great or small,

though the form of the ballot and notice of election provide "for the sale of intoxicating liquors," or "against the sale of intoxicating liquors."

10. JURISDICTION: Constitutional Question: Title of Legislative Act. Where the question whether a provision in the body of a statute is within its title is raised, a constitutional question is presented, the determination of which rests with the Supreme Court.

11. LOCAL OPTION: Law Not Repealed by Act Regulating Sale of Intoxicating Liquors. The Local Option Law (Acts April 5, 1887, p. 179), is not repealed by Laws 1891, p. 128, regulating the sale of intoxicating liquors, and when the Local Option Law is adopted the Act of 1891 is suspended.

12. INTOXICATING LIQUORS: Statutes: Construction: Beverage Containing Alcohol in any Quantity. Under section 3016, Revised Statutes 1899, defining the term "intoxicating liquors" to mean fermented, vinous, spirituous liquors, or any composition of which fermented, vinous or spirituous liquors is a part, a beverage containing alcohol in any quantity is an "intoxicating liquor," without regard to the quantity of alcohol present.

Appeal from Madison Circuit Court.—*Hon. Chas. A. Killian*, Judge.

AFFIRMED.

*David M. Tesreau* and *John H. Chitwood* for appellant.

(1) The court should have sustained appellant's motion to quash said information, as the evidence in support of the same, showed that there was pending and undetermined, an indictment against the appellant, filed October 1, 1907, and for the same offense charged in the information. The only way to proceed is by indictment. Sec. 2476, Laws 1901, p. 138. (2) The information does not state facts sufficient to charge the appellant with the commission of any offense against the laws of the State of Missouri. And the information does not charge the appellant with the sale of an intoxicating liquor. State v. Houts, 36 Mo. App. 265; State v.

Prather, 41 Mo. App. 451; State v. Fulks, 207 Mo. 26; Local Option Law and the Title to the Act; Sec. 22, Art. 2, Const.   (3)   The court should have allowed the appellant to have the benefit of the special plea denying the adoption of the Local Option Law in Madison county, Missouri.   Appellant was entitled to have the said special plea considered by the court and jury.   The court denied to appellant his right of defense by excluding the said special plea and in sustaining the motion filed by the State to strike from the files said special plea.   The court and jury are competent and required to try all questions between the state and defendant, as to the charge in the indictment and all the defenses that the defendant may have.   The defendant was entitled to a jury trial on his special plea.   State v. Snyder, 182 Mo. 462; State v. Manning, 168 Mo. 418; State v. Laughlin, 168 Mo. 415; State v. Wiseback, 139 Mo. 214; State v. Hatcher, 136 Mo. 641; State v. Huffman, 136 Mo. 58; Secs. 2608, 2723, R. S. Mo. 1899.

*Herbert S. Hadley*, Attorney-General, *Frank Blake*, Assistant Attorney-General, for respondent.

(1)   The information is criticised, because it does not allege that the "Meth" sold by the defendant was intoxicating.   If it was the intention of the Legislature to prohibit the sale of a beverage containing alcohol, only when the proportion of alcohol was such as to render the same intoxicating, there would have been no necessity of placing the beverage clause in the act.   There is no distinction between an intoxicating liquor and an intoxicating beverage.   A "liquor" is a "beverage," and vice versa; and an intoxicating liquor and an intoxicating beverage are one and the same thing.   An analysis of the section in controversy will show that, in addition to prohibiting the sale of intoxicating liquor, it was also the intention to prohibit the sale of every beverage containing alcohol.   The two clauses are separated by the

disjunctive "or," and the information is sufficient, because it charges the crime in the language of the statute. Sec. 3032, R. S. 1899. The fact that the evidence in this case incidentally showed that the "Meth" sold by the defendant was capable of producing intoxication, does not create any legal necessity of charging in the information that it was intoxicating. The State, in thus proving that the beverage was an intoxicant, not only proved more than was necessary, but by such evidence, established beyond any doubt that it contained alcohol, for the best possible evidence of alcohol in a liquor is the fact that it produces intoxication. (2) Appellant contends that the procedure by indictment should have been pursued to the exclusion of the procedure by information under section 2476, R. S. 1899. This section is only designed to apply when the offenses are the same, or when a conviction on one charge would bar a prosecution for another similar offense committed on the same day. Under section 3032, R. S. 1899, two offenses could be committed on the same day where two sales were made at different times to the same purchaser, because each sale is a separate and distinct offense. State v. Small, 31 Mo. 197; State v. Andrews, 27 Mo. 267.

REYNOLDS, P. J.—This is a prosecution commenced by information filed in the circuit court of Madison county by the attorney of that county against the defendant, for that on or about the 19th day of September, 1907, the Local Option Law having theretofore been adopted and being then in force and effect in Madison county, he did then and there unlawfully sell to one Gahring, "one pint of 'Meth,' the said 'Meth' being a beverage containing alcohol," for a price named, without the defendant then and there having any authority to make said sale, contrary, etc. On a trial and conviction defendant appealed to the Supreme Court, claiming that the construction of the Constitution of this state and

of the United States was involved. The Supreme Court holding that the constitutional question had not been properly raised in the trial court, defendant must be considered to have waived it. That court accordingly, for lack of jurisdiction by it over the cause, ordered the transfer of the record to this court. Under the title State v. J. F. Gamma, 215 Mo. 100, 114 S. W. 619, Judge BURGESS delivering the opinion, stated the facts of the case so fully that it is unnecessary to repeat them.

The main errors relied on in this court are the overruling of the motion to quash, the exclusion of evidence offered attacking the election at which it is claimed the Local Option Law was adopted in Madison county, the claim of an indictment pending for the same offense and which was returned prior to the filing of this information, and the claim that as there is no evidence that "Meth," the article sold, was an intoxicating liquor, its sale did not come within the prohibition of the Local Option Law. Apart from these the points presented in the very able brief argument of counsel for the appellant go to the constitutionality of the Local Option Law, we having the benefit of the same brief and arguments that were filed in the Supreme Court by counsel for the defendant as well as by the then Attorney-General of the state. These constitutional questions not being open to our determination it is only necessary to notice those above mentioned. Covered by the motion to quash, as well as by the special plea interposed in connection with the plea of not guilty, is the contention that under the Act of March 13, 1901, amending section 2476, Revised Statutes 1899 (see Acts 1901, p. 138), this defendant having been proceeded against by indictment before the present information was filed, the information should have been quashed and he should not be required to answer to the information. The difficulty with this contention is that it does not appear, either by the motion to quash, or by any evidence in the case, that the sale

upon which the present information is founded is the identical sale upon which the indictment was based. As settled by a multitude of decisions construing our statutes, particularly relating to the sale of liquors, although the same principle applies to many other offenses, each sale or act constitutes a distinct offense. The mere fact that the same date and the same party are named as the date of the sale and the person to whom the sale was made, is not conclusive in itself of the fact that it was the same sale. It might well be that there were two sales on the same day to the same person; one sale even immediately following the other; each by the same defendant. Hence when the defendant attempted to plead the pending indictment in bar of the information or in abatement of the prosecution under that information, or when he attempted to plead or give in evidence one information as a bar against the other, as was also attempted here at the trial, the burthen was on him to plead identity and follow that up by proof of identity of the act. It was open to the defendant to have followed up and possibly even to help out a faulty plea by oral testimony, but he did not even attempt to do this, beyond giving evidence tending to show the identity of the defendant, and rested entirely on the plea, which was a faulty one, lacking in preciseness. The evidence introduced was insufficient and had no tendency to show identity of offense, and in no manner helped out the faulty plea. It is hardly necessary to cite authorities on this proposition but by way of illustration see State v. Andrews, 27 Mo. 267; State v. Small, 31 Mo. 197; State v. Thornton, 37 Mo. 360, l. c. 361; State v. Manning, 168 Mo. 418, 68 S. W. 341.

The other point covered by the motion to quash, as well as also attempted to be made at the trial under the plea of not guilty, goes to the adoption of the Local Option Law in Madison county. This point could not be made by motion to quash, for it involved a question

of fact, if properly raised, to be tried by a jury, and
would have been properly tried along with the case on
its merits, for our practice does not tolerate two jury
trials, one on the plea in abatement, another on the plea
in bar, in criminal cases; both are triable together. The
matter relied on to show the invalidity of that law was
not any irregularity, omission or failure to observe the
law on the part of the county court either in the initial
step, which is filing with the county court the petition to
submit the question of the adoption of the Local Option
Law to a vote of the people by the necessary num-
ber of qualified signers, and which is jurisdictional, or
in any of the subsequent steps taken by the court. There
is no claim of any irregularity in the action of or non-
compliance with the requirements of the law on the part
of the county court, but the point of attack is alleged
violation of law or irregularity in the conduct of the
election itself, on the part of the judges of election at
the polls. The defendant offered to prove, by the testi-
mony of witnesses, that certain parties who had voted at
that election had first cast ballots, "For the sale of in-
toxicating liquors," and then, at their request had those
ballots withdrawn from the ballot boxes by the judges
of election and handed back to them, and that by per-
mission of the judges of election, in several of the pre-
cincts in which they had voted, were allowed to cast
other ballots headed, "Against the sale of intoxicating
liquors." It appears that the proposition against the
sale of liquors was carried by five votes, and offers were
made to prove the change of votes as above by eight vot-
ers. The complaint or challenge is to the action of the
judges in the election precincts in permitting this
change. When evidence to this effect was offered on the
part of defendant, it was objected to as incompetent
and on the ground that the adoption of the law could
not be challenged in this way, this, it being claimed,
amounting to a collateral attack on the judgment of the

county court declaring the law adopted. The objection was sustained and the evidence excluded.

We are cited to no case directly bearing upon this particular proposition, but on the general principles that have been recognized in this state, where the validity of adoption of the Local Option Law has been under consideration, we hold that this evidence was properly excluded. It is the kind of evidence that would be entirely competent if the election had been contested in a direct proceeding; a proceeding involving a direct attack upon the declared result of the election. While it is true that the Local Option Law provides that the election "and the result thereof may be contested in the same manner as is now provided by law for the contesting of elections of county officers in this state" (R. S. 1899, sec. 3131), the Kansas City Court of Appeals, in the case of Kehr v. City of Columbia, 136 Mo. App. 322, 116 S. W. 428, and the Springfield Court of Appeals, in the case of Haas v. City of Neosho, 139 Mo. App. 293, 123 S. W. 473, have held that contests of elections held under the Local Option Law are not possible; that the law for contesting elections of persons for county offices, which was attempted to be applied to such elections, requires a contestor who was a candidate on one side, as against the candidate on the other as contestee; that no person being a candidate for election to office at these elections, no contest for office being involved in a local option election, there could be no proper parties to institute or defend such a contest; that therefore a local option election is not open to contest for lack of sufficient statutory provisions which can be made to fit the case. We are inclined to accept these decisions as correct expositions of the law and to treat the subject, as did those two learned courts, as one of legislative omission beyond the curative power of the courts.

It is the settled law of this state that contests

of elections are entirely of statutory origin and entirely dependent upon statutory provisions for their conduct. Because the legislative branch of our government has not seen fit to provide for the contest of an election held under the Local Option Law, it by no means follows that the courts can either directly or indirectly supply the omission, and conduct such a contest, which is practically what was here attempted. This is not an uncommon situation, arising from lack of specific legislation concerning election contests. Thus in the case of State ex rel. Francis v. Dillon, 87 Mo. 487, where one candidate for mayor of the city of St. Louis attempted to contest the election of his opponent and in the course of the proceeding applied to the court for an order to open the ballot boxes and count the ballots, the Supreme Court held that as there was no statutory provision then in existence providing for or regulating contests for municipal offices, that no power existed in the courts to make the order for the opening of the boxes. When afterwards it was attempted to reach the same election by means of a proceeding in *quo warranto,* the Supreme Court in the case of State ex rel. Ewing v. Francis, 88 Mo. 557, again held that in the absence of express provision for a contest of an election to a municipal office, the election could not be inquired into or contested even under writ of *quo warranto.* It is true that this latter case has been criticised in State ex rel. v. Slover, 134 Mo. 10, 31 S. W. 1054, 34 S. W. 1102, but not on this point. We are not to be understood as passing on the legality of the officers of election in withdrawing ballots once cast and permitting those who cast them to replace them with others, and then counting and including them in the returns as last cast, if these are facts. On that we express no opinion whatever. Nor are we to be understood as holding that if the election officers did what is charged, and their acts were illegal, that those officers are beyond the reach of the criminal laws

of the state for misconduct or malfeasance in office; on this proposition we express no opinion. All that we are here deciding is, that the offered evidence in this case as to the alleged acts at the polls at this election, cannot be inquired into in this prosecution.

Nor does it follow that by reason of the failure or lack of statutory provisions for a contest that the result of the election can be attacked collaterally. As before stated, it is the uniform decision in this state that the county courts act judicially in these matters of ordering the election under the Local Option Law and in ascertaining and declaring the result, and when jurisdiction is vested in these courts by the filing with them of a legal petition, and when their subsequent acts, involving the notice and its publication and the return and declaration and publication of the result of the election are regular, then no court will go back of these adjudications, as in effect they are, and in a collateral attack, as is this at bar, enter upon an examination of the conduct of the election itself. We hold the the action of the county court, in the determination of the result of this election, was a judicial act on its part, and all the steps taken by it appearing regular and in accordance with the law, its declaration of the result is not here open to attack. Hence the motion to quash was properly overruled, and when the evidence to sustain its allegations was offered at the trial, it was properly rejected.

The state having introduced in evidence, without objection, the records of the county court, showing the proceedings connected with the submission of the question of the adoption or rejection of the Local Option Law to a vote of the people, and no irregularity or departure from the requirements of the law appearing in these records, the learned trial judge very properly instructed the jury that on the date of the alleged sale the Local Option Law was in force in Madison county.

This was not an instruction based on the theory that the trial court would take judicial notice of the fact of the adoption of the Local Option Law, but was an instruction based on the evidence, the legal effect of which the court had a right to declare. There was no error in this action of the trial court.

The only remaining question in the case is as to whether the sale of "Meth" constitutes the sale of an article prohibited by the Local Option Law and its sale within the prohibitions of the law. It will be noted that the information does not charge "Meth" to be an intoxicating liquor but charges it to be a beverage containing alcohol. That being so, if it is a fact that it contained alcohol then its sale in counties in which the Local Option Law prevails is prohibited. It is true that the form of the ballots, as also the notice of the election is, "for the sale of intoxicating liquors," or "against the sale of intoxicating liquors." But while that is true, the statute (section 3032, R. S. 1899) in so many words declares that if a majority of the votes cast at any election held under the provisions of the article shall be against the sale of intoxicating liquors, "it shall not be lawful for any person . . . to directly or indirectly sell . . . in any manner whatever any kind of intoxicating liquors or beverages containing alcohol in any quantity whatever under the penalties hereinafter prescribed." This provision of the law is too plain to require construction. The law-making power of the state has said, in so many words, that when the Local Option Law has been adopted and is in force in a county, it shall be unlawful to sell any beverage containing alcohol in any quantity whatever in that county. The law further, in effect, declares that if the majority of the voters vote "against the sale of intoxicating liquors," no "beverage containing alcohol in any quantity whatever" shall be sold in the community so voting. There was no pretense what-

149 App—45

ever in the case at bar that "Meth" is free from alcohol; no denial that there is evidence that the defendant sold "Meth" to the person named, within one year prior to the filing of the information, and that the sale was made in the county named. It is true that in some of the specimens of "Meth" which were analyzed only a small quantity, a little over one per cent of alcohol, appeared on analysis. The quantity has nothing whatever to do with the matter—whether more or less, the sale of a beverage containing any alcohol is prohibited by this law. Whether the words, "beverages containing alcohol," are within the title of the act, would present a constitutional question, if the constitutional question had been properly raised of record, the determination of which would not rest with us, but our Supreme Court has said that in this case no constitutional question is presented or saved by the record.

While hardly a matter within our jurisdiction, it is not out of place to say that the point made by counsel for appellant, that the decision of our Supreme Court in the case of State v. Fulks, 207 Mo. 26, 105 S. W. 733, covers this case, is not maintainable. It is true that it was held by our Supreme Court in that case that the title of the Local Option Act of 1887 clearly indicates that it was the purpose of the Legislature "to prohibit the sale, directly and indirectly of intoxicating liquors in those counties which should adopt the said law and that this purpose is indicated in the body of the act itself." Counsel for appellant quote this in support of their claim that this decision holds that the Local Option Law applies alone to intoxicating liquors; that this excludes beverages which are not intoxicating. That is a misapprehension of the scope of that decision. The question in decision in the Fulks Case was on the use of the word "sale," not on the words "intoxicating liquors."

We find in the very instructive brief of the learned

counsel for the appellant a suggestion that the Local Option Law was repealed by the Dramshop Law, the proposition being put by them in this way, "that on the passage and approval of the Local Option Law (Act approved April 5, 1887) all other laws on the subject of intoxicating liquors were repealed, and that the Local Option Law became operative as a general law from and after the expiration of ninety days after the adjournment of the Legislature of 1887." It is then argued that the Act approved April 5, 1887, that is the Local Option Law, was in turn repealed by an Act of the Legislature approved April 20, 1891, entitled, "An Act to Regulate the Sale of Intoxicating Liquors in the Original Package or Otherwise" (Laws 1891, p. 128). This Act of 1891, as it is here called, is our article 1, of chapter 22, Revised Statutes 1899, sections 2990 and following. Our courts have too frequently passed on the question that when the Local Option Law was adopted the article above referred to is suspended in the counties adopting local option to require more serious notice of the proposition. The Act of 1891 was a mere revision of the former Dramshop Law and was not intended to and did not repeal or in any way affect the Local Option Law. The one regulates the sale of liquors when their sale is lawful. The other forbidding the sale, provides penalties for selling in counties which adopt it. There is this to be said however, in passing, that the very specious argument of the appellant, that a beverage containing alcohol is not to be considered as an intoxicating liquor on the rule *ejusdem generis,* might be answered by a reference to a section of this same Act of 1891, now section 3016, Revised Statutes 1899. By that section it is enacted that "the term intoxicating liquor as used in this article shall be construed to mean fermented, vinous and spiritous liquors or any composition of which fermented, vinous or spirituous liquors is a part." Alcohol being of the class of spirituous liquors undoubt-

edly comes within the definition of this section, and if we were to apply that section as an authoritative legislative definition of the term "intoxicating liquors," as we might do, even if the Local Option Law had not specified a beverage containing alcohol as within its prohibitions, it would seem to be true that on proof of alcohol in any quantity being contained in the article sold, it would come within the definition of intoxicating liquor without regard to the quantity of alcohol present, and that the words "beverages containing alcohol" are a merely superfluous description of the term "intoxicating liquor."

We find no reversible error in the action of the trial court in giving and refusing instructions.

On consideration of the case we have concluded that the verdict and judgment of the circuit are correct. That judgment is affirmed. All concur.