## AS TO VALIDITY OF A MUNICIPAL BOND ISSUE.

Common Pleas Court of Franklin County.

CHARLES I. LINK v. GEORGE J. KARB, MAYOR.

Decided, February 24 and March 17, 1913.

*Elections—Construction of Statutes Relating to Closing of Polls—An Election will not be Declared Void unless Clearly Illegal—Burden of Proof upon the Contestant—Recent Constitutional Amendment Relating to Bond Issues Construed.*

1. The statutory provision that polls shall be kept open until 6 P. M. is directory only, and the fact that an election for the purpose of authorizing an issue of municipal bonds the polls were closed at 5:30 P. M. is not sufficient to warrant the granting of an injunction restraining the putting forth of such issue, in the absence of fraud or a positive showing that the result would have been materially changed had the opportunity to vote been extended .to 6 P. M.

2. Nor is an issue of municipal bonds rendered invalid under the recent amendment to Section 2 of Article XII of the state Constitution by reason of the failure of council to make provision for levying and collecting annually by taxation an amount sufficient to pay the interest on the bonds and to provide a sinking fund for their final redemption at maturity.

*George B. Okey* and *Robert W. McCoy*, for plaintiff.
*Stuart R. Bolin*, contra.

KINKEAD, J.

This is a proceeding brought by plaintiff as tax-payer to annul an election held on the 21st day of May, 1912, on the question of issuing and selling bonds by the city of Columbus in the sum of $700,000 for the purposes of eliminating the grade crossings of certain railroads in the city, and to enjoin the city from issuing the bonds.

The grounds upon which it is claimed that the election was invalid are the following:

By proclamation of the mayor the election upon the question of issuing the bonds was to be between the hours of 5:30 A. M. and 6:00 P. M. But the election officers having charge of such election gave instruction to the judges and clerks that the polls should be open from the hours of 5:30 A. M. to 5:30 P. M. And that the polls were accordingly closed at 5:30 P. M. instead of at 6:00 P. M.

It is claimed that by reason of such action many of the qualified electors were prevented from voting at such election. It is averred that "plaintiff does not know and has no means of ascertaining and can not therefore with definiteness and precision aver the number of duly registered and qualified electors of said city of Columbus who desired to vote against the proposition and who were prevented * * * from voting against the proposition * * * but the number of the said electors who desired to vote against said proposition and who were prevented from voting * * * was more than sufficient to prevent the carrying and adopting said bond issue of $700,000."

A demurrer is interposed to the petition which disclaims an admission of the contentions of plaintiff that 664 or any number of voters voted illegally, or that 664 or any number of voters who would have voted, would have voted against the bond issue if permitted to vote.

We can not, without evidence, speculate upon the number of voters who would have voted had the polls been kept open a half hour longer as required by the mayor's proclamation and the law.

The validity of the election and of the issue of bonds in accordance with the vote thereon depends upon the question whether the statute requiring the polls to be kept open until 6 is mandatory or *directory;* whether there has been a substantial compliance with law, which, in the absence of fraud, or positive proof that a sufficient number of votes were illegally cast, or that a sufficient number of votes were not cast on account of the closing of the polls a half hour before time, as to materially change the result, will satisfy the requirements of law and validate the election.

An examination of the authorities discloses that the general view is that such a statute is directory, and that before any election can be set aside because of deviation from the statute, it must be shown that legal votes were excluded or illegal votes received in consequence thereof. A slight deviation from the direction of the statute in this respect will not render void the election unless it is fraudulent and operated to deprive legal voters of their rights. *McCrary on Elections*, Section 163; *Fry* v. *Booth*, 19 O. S., 25; *Baltes* v. *Framer & Co.*, 60 Neb., 315; *Whitcomb* v. *Chase*, 83 Neb., 365; *Swepston* v. *Barton*, 39 Ark., 549; *Cressup* v. *Gray*, 10 Ore., 345; *People* v. *Bates*, 11 Mich., 362; 83 Am. Dec., 751, note.

Provisions of a statute relating to the opening and closing of polls are generally deemed to be directory only, if substantially complied with, and where no obstruction to a fair expression of the will of the people is shown, a failure to strictly comply with the statute will not vitiate an election. *Fry* v. *Booth*, 19 O. S., 25; *Holland* v. *Davies*, 36 Ark., 446; *People* v. *Hasbrouck*, 21 Misc. Rep., 188 (47 N. Y. Supp., 109), *State* v. *Smith*, 4 Wash., 601; *Cleveland* v. *Porter*, 74 Ill., 76 (24 Am. Rep., 273).

The more general holding is that laws relating to the opening and closing of polls are directory only. *Swepson* v. *Barton*, 39 Ark., 549; *Pratt* v. *People*, 29 Ill., 54.

In some jurisdictions such provisions are regarded as mandatory, failure to observe which vitiates the election. *Banks* v. *Sergent*, 104 Ky., 843; *Varney* v. *Justice*, 86 Ky., 596.

All provisions of law relating to elections when sought to be enforced after election are held to be directory merely, if this is possible. It is therefore generally held that statutes relating to the manner of conducting the details of an election, are not mandatory but directory merely. This is so unless a non-compliance is expressly declared to be fatal to the validity of the election, or will change or make doubtful the result (*Willeford* v. *State*, 43 Ark., 62; *Trimmer* v. *Bomar*, 20 S. C., 354). Such provisions should be construed as mandatory only when the real merits of the case are affected (*Varney* v. *Justice*, 86 Ky., 596). Hence irregularities in conducting an election will not vitiate it, unless they are shown to be such as to affect the final result. 90 Am. St., 72, note, and cases cited.

It has been many times declared to be the cardinal rule of election that mere irregularities on the part of election officers are not sufficient to prevent the will of the people from being carried into effect when fairly expressed. *Jones* v. *Caldwell*, 21 Kan., 186.

At this election, which was a primary election, May, 1912, it is a significant fact of the interest and will of the people touching the question of elimination of grade crossings, that 20,303 votes were cast on the question of issue of bonds, of which 14,198 favored the issue, 6,105 voting against it, while only 17,226 votes were cast for the candidates for the nominations to Congress.

Courts will decline to regard an election as void unless clearly illegal, but will rather give it effect if possible.

It is argued that inasmuch as the bond election was held in connection with a primary election, there must have been many minors who may have qualified for voting at the subsequent general election who cast their votes at the primary election and upon the bond issue, which would render the bond election invalid.

It would seem more rational to presume that minors who qualify themselves at a general registration for voting at a general election for which they are qualified to vote, would not, and have not voted at a prior primary election, or bond election for which they are not qualified by age to vote.

Furthermore, it is to be presumed that should such persons offer to vote their want of qualification would appear to the election officers when making a record of their names, their age always appearing on the record.

In addition to such presumption, the plaintiff by consulting the registration and poll books for the city election could have ascertained definitely whether any such illegal votes were cast at such bond election, and have alleged the same in his petition. Not having done so, the court can only conclude that his allegations are nothing but conjecture, and that the claim now insisted upon in the elaborate brief just submitted that the election must be considered illegal because doubt and uncertainty is cast upon it by the supposition that many disqualified minors

must have voted, and that many were prevented from voting by reason of the untimely closing of the polls, is not well founded.

Such claims are born of conjecture and uncertainty and do not rest upon the substantial merits of the election which the law requires.

The burden is on the contestant to show substantial grounds invalidating the election. This the plaintiff has failed to do in this case, and for the reason stated it is held that the election was legal; that the issue of bonds by the city of Columbus is legally authorized.

The demurrer to the petition is therefore sustained, and the action is dismissed.

This case is submitted on a supplemental petition and a demurrer thereto.

The original petition sought to enjoin an issue of bonds voted upon by the electorate of the city of Columbus, on the Ground of irregularity in the election. The bond issue was sustained as against that objection.

By the supplemental petition it is sought to enjoin the issue on the further ground that the council of the city of Columbus has not made any provision, or passed any ordinance or resolution, for leving or collecting annually by taxation an amount sufficient to pay the interest on the bonds, and to provide a sinking fund for their final redemption at maturity, or any part thereof, as now required by Section 2 of Article XII of the Constitution, which amendment went into effect January 1, 1913.

The amendment is as follows:

"No bonded indebtedness of the state, or any political subdivision thereof, shall be incurred or renewed, unless, in the legislation under which such indebtedness is incurred or renewed, provision is made for levying and collecting annually by taxation an amount sufficient to pay the interest on said bonds, and to provide a sinking fund for their final redemption at maturity."

It is contended by plaintiff that though the election by which the bonds were authorized was held prior to the time the amend-

ment went into effect, still the acts of the municipality in taking the final steps in passing the ordinance for their issuance the requirements of the amendment have not been complied with.

On the other hand the solicitor takes the position that to apply the amendment to this case would be retrospective and would be within the inhibition of the Federal Constitution forbidding the impairment of contracts.

On this point the holding is that it does not come within the restriction of the Federal Constitution, for the reason that under present conditions it only affects a subordinate agency of government, the power of which is always subject to the control of the people and the state.

When the amendment of the Constitution became the fundamental law of the state, it made it incumbent upon all governmental agencies in the matter of issuance of bonds to conform to its provisions, provided it makes any change in laws necessary.

The court must be satisfied that provision has been made somewhere by existing legislation to levy and collect taxes sufficient to pay the interest on the bonds and to provide a sinking fund for their retirement, at maturity, as required by the amendment before the right to issue them can be exercised.

The power to tax being inherent and exclusive in the state, we must look for legislation by the state to ascertain if provision is made by existing legislation sufficient to carry out the purposes of this amendment.

The state must inaugurate the legislative plan, if additional legislation is necessary, to carry out the constitutional policy, because of its inherent power to tax. Our first duty is therefore to see if existing legislation is adequate to carry out the purpose of the amendment.

The policy adopted by the existing legislation for the payment of the interest and for a sinking fund for the extinguishment of all bonds and funded debts is to be found in Section 4506 *et seq.*

Section 4506 authorizes municipal corporations having outstanding bonds through their councils to make an annual levy

sufficient to pay the interest and provide a sinking fund for the extinguishment of all bonds, and funded debts.

Section 4517 provides that the trustees of the sinking fund shall have charge of and provide for the payment of all bonds issued by the corporation.

Section 4523 provides that the sinking fund trustees "shall be a board of tax commissioners."

Section 4513. "On or before the first Monday in May of each year, the trustees of the sinking fund shall certify to council the rate of tax necessary to provide a sinking fund for the future payment of bonds issued by the corporation.   *   *   * The council shall place the several amounts so certified in the tax ordinance before and in preference to any other item and for the full amount certified.  Such taxes shall be in addition to all other taxes authorized by law."

Section 5649-1, Sec. 1, provides:

"In any taxing district, the taxing authority shall levy a tax sufficient to provide for sinking fund and interest purposes."

Section 5649-3a provides that:

"On or before the first Monday in June, each year, the county commissioners of each county, the council of each municipal corporation, the trustees of each township, each board of education, and all other boards or officers authorized by law to levy taxes, within the county,   *   *   *   shall submit or cause to be submitted to the county auditor an annual budget, setting forth in itemized form an *estimate* stating the amount of money needed for their wants for the incoming year."   *   *   *

The aggregate of *all taxes* that may be levied by a municipal corporation on the taxable property in the corporation for corporation purposes, on the tax list, shall not exceed in any one year five mills.

Section 5649-3c provides the auditor shall lay before the budget commissioners the annual budgets submitted to him by the boards, etc.   *   *   *

The budget commissioners shall examine such budgets and estimates prepared by the county auditor, and ascertain the total amount *proposed to be raised* in each taxing district.   *   *   *

If the budget commissioners find that the total amount of taxes to be raised therein does not exceed the amount authorized to be raised in any * * * city * * * the fact shall be certified to the county auditor.

If such total is found to exceed such authorized amount in any * * * city * * * the budget commissioners shall adjust the various amounts to be raised so that the total amount thereof shall not exceed in any taxing district the sum authorized to be levied therein. * * *

When the budget commissioners have completed their work they shall certify their action to the county auditor, who shall ascertain the rate of taxes necessary to be levied * * * in each township, city, village, school district or other taxing district, * * * and place it on the tax list of the county.

By Section 5649-5, the council of any municipal corporation may, at any time, by a majority vote declare by resolution that the amount of taxes that may be raised by the levy authorized by Sections 5649-2, 5649-3, will be insufficient, and that it is expedient to levy taxes at a rate in excess of such rate and cause such resolution to be certified to the deputy state supervisors, which by Section 5649-5a shall be submitted to the electors of the district.

Section 3943 et seq., provides for submission of the issuance and sale of bonds to vote.

Section 3947, provides that if two-thirds of the voters voting at such election, vote in favor of the issuance, "the bonds shall be issued."

Section 3950, Sec. 12, provides: An indebtedness shall not be deemed to have been created or incurred * * * until the bonds shall have been delivered under contract of sale.

Section 3953, Sec. 15, provides: For the payment of all bonds herein authorized, unless the interest thereon and redemption thereof is otherwise provided for, council shall levy each year during the periods the bonds have to run, a tax in addition to all levies authorized by law, sufficient to pay the interest thereon as it matures, and provides a sinking fund for their redemption at maturity.

These statutes disclose the scheme of levying taxes for bonded indebtedness and other purposes by existing statutes.

The contention of counsel for the plaintiff is that under this amendment it is sought to remedy the evil of renewing bonded indebtedness, piling it up and never paying it off, by forcing the collection, each year, by taxation, under a levy made at the time the bond issue is provided for, not only of the annual interest, but above all of a sum sufficient to provide a sinking fund that, at the end of the bond period, would necessarily retire the bonds and extinguish the indebtedness.

It is urged that the only purpose of the amendment was to bring about such annual levies through compulsory adoption of statutes requiring levies to be made in accordance with the amendment.   That the constitutional mandate is a condition precedent to the validity of bonded debt that a tax shall be levied at the time of the adoption of the legislation authorizing the issuance of the bonds, in such manner as to assure the extinction of the particular indebtedness at maturity.

If such is the purpose, and the legislation now covering the subject is insufficient, it must follow that the bonds in this case can not now be issued.

It is natural in searching for the meaning of the amendment to suppose that it contemplates that the legislation under which bonded indebtedness is now incurred shall mean the immediate legislation by council authorizing the issuance of bonds, because it provides that no bonded indebtedness shall be incurred or renewed unless provision is made for levying and collecting annually by taxation an amount sufficient to pay interest and provide a sinking fund for their redemption.

The bonded indebtedness which the council of the city of Columbus proposes to create is *under* and by virtue of Sections 3939 to 3951-1 inclusive, Section 3950, Sec. 12, providing that it shall not be incurred until the bonds have been delivered. Nothing could be clearer than this. Section 3953, Sec.15, together with Sections 4506, 4517, 4523, 4513, is legislation under which it is proposed to incur this bonded indebtedness which with the legislation on the subject of taxation makes full and adequate provision for levying and collecting annually by taxation an amount sufficient to pay the interest on the bonds and to provide a sinking fund for their final redemption.

From the review of the statutes on the subject it appears that by Section 3953-15, the council is given express power to make a levy for the bonds which it is authorized to issue for all the purposes specified in the preceding section. It is given express power to make the necessary levy to pay the interest as well as to provide a sinking fund to pay off the bonds at their maturity.

But later statutes provide that the council shall not make such levy except upon a certificate to it by the sinking fund trustees who are given charge of all bond issues by the city and whose duty it is to make payment of the same (Code, Section 4517). They are, in fact made a special board of tax commissioners for the express purpose as an agency of the city. They are bound also by the provisions of Section 3953-15, which makes it mandatory that the council shall make a levy for each issue of bonds sufficient to pay interest, and to create. a sinking fund that will redeem the bonds at maturity, which is the requirement of the constitutional amendment.

While the levy made by the council in obedience to the statutory mandates is not made until just prior to the time council is required by the general tax laws to certify its tax budget to the county auditor, still considering all the statutes together they are nevertheless sufficient legislation which is now part of the legislation of the state to accomplish the purposes and objects of the amendment.

A levy made at the time specified which will take care of these bonds in the manner required by the amendment, although it may not be made before the bonds are actually issued, is nevertheless sufficient to provide for the payment of interest and the sinking fund to discharge them at maturity, provided the levy made at that time can be so made as to be permanent throughout the life of the bonds, that is, that a levy shall be made each year throughout the life of the bonds which will redeem them at maturity.

But, under the present laws the matter of making the necessary levies is left to the sinking fund trustees, and the levy made by the cities are governed by the limitations created by the Smith tax law. Of course under the present tax law the

sinking fund trustees and the city council are not authorized to make the levy themselves direct, their function being to certify to the county auditor the amount needed for their wants.

While Section 3953-15 is in a measure modified by the Smith one per cent. tax law, to the extent that the sinking fund trustees and the council determine the amount needed and then to certify it, still I am of opinion that the requirement of Section 3953-15 that provision shall be made by a tax levy so that the interest on bonds shall be paid, and that the sinking fund shall be created so as to retire the bonds at maturity, is applicable and binding on the sinking fund trustees in making their recommendations to council.

It is urged that the county auditor and budget commissioners are now the sole taxing power. I can not acquiesce in such a view. The sinking fund trustees, and the city council perform a duty and function in the matter of levying taxes, which may be considered as much a part of the power of levying a tax, as may the act of the county auditor, who, when the budget commissioners have completed their work and certified their action to him, ascertains the rate of taxes necessary to be levied and places it on the tax list of the county.

*State, ex rel,* v. *Toledo,* 84 O. S., 506, holds that the taxing authorities of any taxing district may levy taxes according to the rate specified by law, as well as levies for sinking funds and interest purposes, to provide for any indebtedness incurred before the Smith law, as well as that which may be incurred after its passage, by a vote of the people; and in the case of *Roose* v. *State,* the Supreme Court on the authority of the Sanzenbacher case, held that "There is no limitation on the amount that may be levied in excess of ten mills for interest and sinking fund to provide for bonded indebtedness incurred prior to the passage of the act of June 2, 1911, Volume 102 O. L., 266."

The budget commissioners merely perform the duty of seeing that the taxing authorities of the district have not exceeded the amount which the law provides may be levied in such district. It may be said that the sinking fund trustees, the municipal council, the prosecuting attorney, the mayor, and the county

auditor together constitute the taxing officers, because all of their acts are necessary to produce the needs for purposes of taxation. The budget commissioners must see that the rate does not go higher than the law permits, but the sinking fund trustees and the council, in their itemized forms of estimates stating the amount of money needed for their wants, must set forth all of the facts to show that they are not submitting facts which will disclose that they are seeking more than the law allows them.

So far as this case is concerned, it is plain that existing legislation is adequate to accomplish the purposes of the constitutional amendment, for the reason that by virtue of Section 4513 the amount certified by the sinking fund trustees to be council as being necessary to provide for the sinking fund for the future payment of bonds is preferred over all other amounts or items of taxation for city purposes. Therefore, it must follow that if by giving preference to the sinking fund, other departments of the city can not have what their needs demand, they must suffer the cut in the rate until relieved by law.

As the brief of counsel shows, it has been done by eminent officials, that the Smith law was "conceived in iniquity and born in sin," and that it is "the most iniquitous piece of legislation ever enacted by the General Assembly," it has also been stated that its provisions are such that certain cities are able to take care only of the bonded debt. That can have no weight in this case so long as it is certain that provisions may be made for annual levies for interest on the bonds and for a sinking fund to redeem them at their maturity. And this we find may be done.

With questions of policy, courts have nothing to do, their duty being merely to declare the law. But the conditions presented by this case lead to the expression that a limit upon public expenditures with annual raising of tax levies to provide for gradual increase in expenditures, is a commendable policy. And it may be suggested that by way of compliance with the restrictions of the present tax law, and particularly with the amendment to the Constitution, the council of a municipality, before acting under the authority given by Sec-

tions 3939, 3943, etc., should first ascertain from the city auditor and sinking fund trustees, whether, considering the absolute needs of the city, and the amount of levy it may obtain under the law at the next taxing period, it may have the right under the restrictions of the constitutional amendments and the tax law, and may safely undertake the sale of bonds, and whether it may be able to obtain the levy which will take care of the bonds. The amendment to the Constitution is a check upon the right to issue bonds, unless you may know in advance whether the income of the city will take care of absolute needs of the municipality and provide for a new issue of bonds. It would not be good administration to add bonded indebtedness which must be paid, because the law gives it a preference, when some other departments would have to suffer. An estimate could easily be made at any time it was desired to issue bonds, on the amount of increase in taxation a municipality may obtain, so as to determine whether the city can afford a proposed bond issue. If any further legislation is needed at all, it would be along this line, although it may not be vital to the question here. An ordinance proposing a bond issue could recite the facts as to the ability to care for its running expenses and current indebtedness, and at the same time incur additional bonded indebtedness and be able to meet the requirements of the Constitution.

It seems, however, that the effect of the decision of *Roose* v. *State,* by the Supreme Court, is to destroy the effect of the limitation of the Smith law, to conform to which decision the law is now being repaired by the Legislature. Whatever the effect of that decision may eventually prove to have, it is sufficient to state that for the reasons stated in this opinion the demurrer to the supplemental petition should be sustained, which is accordingly done.