[Crim. No. 580. First Appellate District.—October 27, 1915.]

## THE PEOPLE, Respondent, v. BOB CLARK, Appellant.

INTOXICATING LIQUORS—PROSECUTION UNDER WYLLIE LOCAL OPTION LAW —EVIDENCE—INVALIDITY OF TERRITORY—PROOF INADMISSIBLE.—In a prosecution under the Wyllie Local Option Law for selling alcoholic liquor in "no license" territory, evidence is properly excluded of certain records offered for the purpose of showing an alleged irregularity in the formation of the territory asserted to be fatal to its legal existence, as, under such law, such a defense may not be interposed.

ID.—PRIMA FACIE EVIDENCE OF "NO LICENSE" TERRITORY—MINUTES OF GOVERNING BODY—PURPOSE OF PROVISION OF ACT.—The provision of the Wyllie Local Option Law declaring that in prosecutions under the act the minutes of the governing body showing the number of votes cast at an election shall be *prima facie* evidence that the territory in which such election was had is "no license" territory, providing said minutes do not show "that at said election there was a majority vote in favor of license," was not enacted for the purpose of permitting, nor does it in terms nor by necessary implication permit, a collateral attack upon each and every step in the proceedings under which a "no license" territory may be created, but the legislative intent was to facilitate the presentation of the proof required in a criminal prosecution for the violation of the statute.

ID.—EVIDENCE—COMMISSION OF SIMILAR OFFENSES—VOLUNTEERED TESTIMONY—REFUSAL TO STRIKE OUT—REVERSIBLE ERROR.—In a prosecution for selling alcoholic liquor in "no license" territory, it is prejudicial error to refuse to strike out on motion of counsel for defendant, certain testimony volunteered by a witness, to the effect that the defendant had committed offenses similar to that with which he was charged and for which he was being tried, where the same was given before counsel had an opportunity to object, and the district attorney, despite the protest of counsel, made it the ground-work of his argument to the jury.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

Burns & Watkins, for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, for Respondent.

LENNON, P. J.—The trial court rightly refused to permit the defendant upon his trial for selling alcoholic liquor in a "no license" territory to have in evidence certain records of the board of supervisors of Fresno County showing the boundaries of Sanger precinct No. 1 and Sanger precinct No. 2, of which precincts the "no license" territory in question formed a part.

The purpose of the proffered proof was to show an alleged irregularity in the proceedings preceding and culminating in the formation of the "no license" territory, which it is asserted, was fatal to the territory's legal existence, and, therefore, rendered its purported formation ineffectual for any purpose. In other words, the defendant by the proffered proof proposed to collaterally challenge the validity of the "no license" territory. This, the weight of authority dealing with statutes substantially the same in scope and effect as the Wyllie Local Option Law of this state, declares he may not do. (*Barton* v. *State*, 43 Fla. 477, [31 South. 361]; *State* v. *Cooper*, 101 N. C. 684, [8 S. E. 134]; *Woodard* v. *State*, 103 Ga. 496, [30 S. E. 522]; *People* v. *Hamilton*, 58 N. Y. Supp. 959, 27 Misc. 360; s. c., 61 N. Y. Supp. 979, 29 Misc. 465; *People* v. *Hasbrouck*, 47 N. Y. Supp. 109, 21 Misc. 188; *State* v. *Gamma*, 149 Mo. App. 694, [129 S. W. 734].)

The statute in question here does not contemplate, as counsel for defendant contends, that the invalidity of the "no license" territory may be interposed and shown as a defense to the prosecution of a charge of having violated the statute. If it did, we would be constrained to pronounce the ruling complained of erroneous upon the authority of the following cases: *Carnes* v. *State*, 23 Tex. App. 449, [5 S. W. 133]; *Curry* v. *State*, 28 Tex. App. 475, [13 S. W. 752]; *Henry* v.

*State* (Tex.), 16 S. W. 342; *Gaines* v. *State,* 37 Tex. Cr. 73, [38 S. W. 774]; *Chapman* v. *State,* 37 Tex. Cr. 167, [39 S. W. 113]; *Bowman* v. *State,* 38 Tex. Cr. 14, [40 S. W. 796, 4 S. W. 635]; *Keller* v. *State,* 46 Tex. Cr. 588, [81 S. W. 1214]; *State* v. *Kline,* 50 Or. 426, [93 Pac. 237].

The provision of our statute relating to the *prima facie* proof to be presented by the prosecution upon a charge of having violated the statute, is, we think, different in its scope and effect from those provisions (relating to the same subject) of the statutes which were under review in the cases last above cited. A consideration of those cases discloses that in each instance the statutes there under review provided that in prosecutions for a violation of the law either the order for a local option election or the order of the county clerk declaring the result of such an election should be *prima facie* evidence of the jurisdiction of the court to proceed in the premises and of the regularity of the proceedings employed in the formation of the local option district. In other words, the statutes under review in the cases last referred to in effect provided that in a prosecution under the statutes the order of the governing body declaring the result of a local option election should be *prima facie* evidence that the local option district had been regularly initiated and legally created. Of course, as the cases last cited hold, if such order was but *prima facie* evidence of the fact which it purported to prove it was subject to rebuttal by competent proof which tended to show a failure to conform to all or any one of the essential requirements of the statute providing for the formation of the local option district. Our statute—the Wyllie Local Option Law—does not provide that in prosecutions for the violation of the law the original record of the formation of the local option district as evidenced by the minutes of the governing body shall be *prima facie* evidence of the legality of each step in the proceedings leading up to and culminating in the creation of a "no license" territory. It declares merely that in such prosecution the minutes of the governing body showing the number of votes cast at an election shall be *prima facie* evidence that the territory in which such election was had is "no license" territory, providing said minutes do not show "that at said election there was a majority vote in favor of license." (Wyllie Local Option Law, sec. 10.)

In our opinion, this clause of the statute under consideration was not enacted for the purpose of permitting, nor does it in terms nor by necessary implication, permit a collateral attack upon each and every step in the proceedings under which a "no license" territory may be created, and in the absence of express terms or a compelling implication to that effect, the statute should not be so construed, for as was said in *Barton* v. *State,* 43 Fla. 477, [31 South. 361], quoting from *State* v. *Cooper,* 101 N. C. 684, [8 S. E. 134]: "The law contemplates and intends generally that the result of an election as determined by the proper election officers shall stand and be effective until it shall be regularly contested and reversed or adjudged to be void by a tribunal having jurisdiction for that purpose. It would lead to confusion and ridiculous absurdity to allow the validity and result of an election to be contested every time the result of it as determined by the election officers became material collaterally in litigation.

In the present case the defendant might be able to prove facts showing that the election mentioned was void for one cause or another; another defendant charged with a like offense might be less fortunate and the state might show that it was regular and valid, and so on indefinitely.

The law does not provide for such continual and repeated contests in every case that may arise. It intends that one contest properly instituted for the purpose shall establish the validity or invalidity of the election questioned. If the present defendant or others were dissatisfied with the conduct of the election or the result of it as declared, they should have promptly brought their action, as they might have done, to contest its validity and the correctness of the ascertained result."

In our opinion the legislative intent in the enactment of the provision of section 10 of the Wyllie Local Option Law was to facilitate the presentation of the proof required in a criminal prosecution for the violation of the statute, and this construction of the statute is fully supported by the case of *People* v. *Mueller,* 168 Cal. 521, [L. R. A. 1915B, 788, 143 Pac. 748], where in holding that courts may not take judicial notice of the fact that a local option election has been had or of the record of such an election, it said: "The last clause of section 10 provides that in any prosecution under the act the record of the governing body of the city, town or

district showing the number of votes cast at the election or a duly certified copy thereof, shall be *prima facie* evidence that the territory in which the election was held is 'no license' territory. If the court must take judicial notice of the fact, this provision would be wholly useless. The necessary inference is that the legislature believed that proof would be required as of ordinary matters *in pais,* and that the provision was intended to facilitate such proof." This being the purpose of the provision in question, then, of course, it cannot be availed of to support a collateral attack upon the validity of a "no license" territory, such as the defendant attempted to make in the present case.

The trial court erred, however, in refusing to strike out on motion of counsel for defendant, certain testimony volunteered by the witness L. E. Albin, to the effect that the defendant had committed offenses similar to that with which he was charged and for which he was being tried. This testimony was given evidently before counsel for the defendant had an opportunity to object, and it proved particularly prejudicial to the defendant inasmuch as the district attorney, despite the protest of counsel for defendant, subsequently made it the ground-work of his argument to the jury. In ruling upon the motion to strike out this voluntary testimony the trial court declared that it was "immaterial," but nevertheless decided to "let it stand." Comprehending and declaring its immateriality, it seems to us that it would have been just as easy for the trial court to say "strike it out" as it was to say "let it stand." The growing tendency to permit irrelevant and immaterial matters to stand in evidence in the face of well-grounded objections is, we think, born of the hope that perchance it may be ultimately determined in the event of a conviction and upon appeal that, when measured by the provisions of section 4½ of article VI of the constitution, they neither controlled the verdict nor contributed to it. In this instance, unfortunately, the argument of the district attorney, coupled with the failure to grant that which the court tacitly admitted to be a well-grounded motion, and one that was made in keeping with the elementary rules of evidence, must result in a reversal. The defendant as a witness in his own behalf denied the commission of the offense charged against him, and the record shows that in his closing argument to the jury the district

attorney said: "... and the only thing that is stated in the defense is the statement of Bob Clark (the defendant) that he did not do it. Now I wonder whether you think Clark's statement is correct, or whether the statement of the boys is correct. They tell you the details, got the flask and went right over to the sheriff with it, and in the statement of the first witness here, L. E. Albin, he said he met Clark in front of the pool hall and said to him 'I want a little bottle, Bob, or something like that.' He said of course, 'I have bought plenty of them before' or 'plenty of them there.' " At this juncture counsel for the defendant objected to the argument upon the lines quoted, practically upon the grounds stated in the motion to strike out, and the district attorney very properly replied that inasmuch as the court had permitted the objectionable evidence to stand when it was first objected to, it was his privilege to comment upon the same in his argument to the jury. The court sat silent and the district attorney continued his argument, driving the point home by repeating substantially that which has been quoted above.

In the light of all that transpired during the argument of the district attorney to the jury, the error of the ruling and its ultimate prejudice are obvious. Because of this error and the manner in which the evil tendency of the objectionable evidence was permitted to permeate and poison the minds of the jury, we have no recourse but to hold that the judgment and order denying a new trial must be reversed.

While the error complained of may not have wholly controlled the verdict, undoubtedly it contributed to it.

The information charged a public offense, and we think sufficiently apprized the defendant of all that it was essential for him to know to intelligently defend against the charge contained therein. In the absence of a demurrer it cannot be said that the defendant was seriously misled by the alleged ambiguity of the information. The judgment and the order denying a new trial are reversed and the cause remanded for a new trial.

Kerrigan, J., and Richards, J., concurred.